■ Salvatore Pennisi, Respondent, v Standard Fruit & Steamship Company, Appellant and Third-Party Plaintiff-Appellant, et al., Defendant and Third-Party Plaintiff. International Terminal Operating Company, Third-Party Defendant-Respondent. [614 NYS2d 519] —Order, Supreme Court, New York County (Carol Arber, J.), entered on or about April 7, 1993, which, *inter alia,* granted the third-party defendant International Terminal Operating Company's ("ITO") motion for summary judgment dismissing the third-party complaint seeking contribution and indemnification while also granting leave to the defendant and third-party plaintiff Standard Fruit & Steamship Company to renew its cross motion for conditional summary judgment on its claim for indemnification at trial, unanimously modified, on the law, to deny that portion of ITO's motion for summary judgment dismissing the third-party complaint seeking indemnification, that portion of the third-party complaint is reinstated, and the order is otherwise affirmed, without costs.

The plaintiff was a longshoreman employed by the third-party defendant International Terminal Operating Company. After he received workers' compensation benefits from ITO, he instituted this action against Standard Fruit & Steamship Company ("Standard Fruit") and Netumar Lines to recover damages for injuries sustained when he collided with a truck while driving a forklift on South Street between Pier 42 and Pier 36. ITO was hired by Standard Fruit to perform stevedoring services at Pier 42, which had been leased by Standard Fruit. It also performed these services at Pier 36, which was leased by Netumar Lines. The plaintiff maintained that he was injured due to the negligence of Standard Fruit and Netumar Lines because at their insistence, the gates between Piers 36 and 42 were closed, requiring him to drive the forklift on the dangerous thoroughfare of South Street in order to get gasoline from Pier 36. Standard Fruit and Netumar then impleaded ITO.

ITO's motion for summary judgment dismissing Netumar's third-party complaint was granted and Netumar has not appealed. ITO then moved for summary judgment dismissing Standard Fruit's third-party complaint which sought contribution and indemnification and Standard Fruit cross moved for conditional summary judgment on its claim for indemnification. In a confusing and seemingly contradictory determination, the Supreme Court, after mislabeling the matter a "slip and fall" case, granted ITO's motion, but denied Standard

Fruit's cross motion with leave to renew at trial. Clearly, dismissal of the third-party complaint precluded Standard Fruit from taking further action with respect to its claim for indemnification.

We modify to deny that portion of ITO's motion for summary judgment dismissing the third-party complaint seeking indemnification since questions of fact exist precluding an award of summary judgment on this issue to either party at this juncture.

We note initially that although the plaintiff stevedore commenced this action in State court, he satisfied both the "status test" and "situs test" for determining an "employee" under the Longshore and Harbor Workers' Compensation Act (LHWCA; 33 USC § 901 *et seq.; see, Northeast Mar. Term. Co. v Caputo*, 432 US 249; *Triguero v Consolidated Rail Corp.*, 932 F2d 95). Therefore, the LHWCA, rather than New York law governs pursuant to the "saving to suitors" clause of the Judiciary Act (28 USC § 1333 [1]; *Triguero v Consolidated Rail Corp., supra; Kenny v Bacolo*, 61 NY2d 642; *Agnese v Taylor Mach. Works*, 171 AD2d 831).

Where an employer has paid workers' compensation benefits to its injured employee, its liability under the LHWCA "shall be exclusive and in place of all other liability of such employer to the employee * * * and anyone otherwise entitled to recover damages from [it] at law or in admiralty on account of such injury" (33 USC § 905 [a]). The LHWCA is therefore the injured longshoreman's exclusive remedy against his stevedore employer *(see, Cooper Stevedoring Co. v Fritz Kopke, Inc.*, 417 US 106, 113; *Magno v Waterman S. S. Lines*, 89 AD2d 958, 959).

The Supreme Court properly dismissed that portion of the third-party complaint seeking contribution since once ITO fulfilled its obligation under the LHWCA by paying out benefits to the plaintiff, further tort-based contribution from the employer was foreclosed *(see, Halcyon Lines v Haenn Ship Corp.*, 342 US 282; *Triguero v Consolidated Rail Corp., supra; Zapico v Bucyrus-Erie Co.*, 579 F2d 714; *Fragedis v Farrell Lines*, 64 NY2d 987; *Magno v Waterman S. S. Lines, supra).* The exclusivity provision of section 905 (a) immunizes such employer from third-party claims for contribution *(Triguero v Consolidated Rail Corp., supra; Zapico v Bucyrus-Erie Co., supra).*

Unlike contribution claims, however, actions for indemnity are not necessarily foreclosed since the employer's liability

"springs from an independent contractual right. It is not an action by or on behalf of the employee and it is not one to recover damages 'on account of' an employee's 'injury or death.' It is a simple action to recover, under a voluntary and self-sufficient contract" *(Ryan Co. v Pan-Atlantic Corp.,* 350 US 124, 130; *Zapico v Bucyrus-Erie Co., supra,* at 719).

It was error to dismiss Standard Fruit's claim for indemnification since questions of fact exist precluding an award of summary judgment. Although the LHWCA precludes a negligent "vessel" from obtaining indemnity from a compensation paying employer (33 USC § 905 [b]; *Fragedis v Farrell Lines, supra,* at 988), Standard Fruit's status as a "vessel" or "nonvessel" within the meaning of the LHWCA cannot be ascertained from this record. In contrast to Standard Fruit's contention that it is solely a lessee of the pier and not an owner of a vessel, ITO contends that since the statute defines " 'vessel' " as, *inter alia,* a "charterer" of vessels (33 USC § 902 [21]), Standard Fruit falls within the definition because it imports perishable fruits, charters ships to dock at the pier and then uses stevedoring companies to remove the produce from the ships.

The LHWCA does not necessarily prohibit a nonvessel from bringing an action for indemnity against a stevedore *(see, Zapico v Bucyrus-Erie Co., supra,* at 721). Should Standard Fruit be found to be a nonvessel, however, it must still establish the existence of an express or implied contract of indemnification *(Fragedis v Farrell Lines, supra,* at 988; *Stuto v Coastal Dry Dock & Repair Corp.,* 153 AD2d 937, 940, *lv dismissed* 75 NY2d 865; *Magno v Waterman S. S. Lines, supra).* Further proceedings must be conducted to ascertain whether such agreements exist.

Standard Fruit contends that this action is governed by an express, unwritten indemnification agreement. The company had a written agreement with ITO's predecessor which contained an indemnification clause and eighteen months after the plaintiff's accident, it entered into a written agreement with ITO containing a similar clause. Although at a deposition, an employee of ITO alleged that the interim agreement, wherein no writing was in existence, differed from the subsequent written agreement, he could not specify the manner in which it varied. Standard Fruit therefore maintains that an express, unwritten agreement existed during this interim period permitting it to seek indemnification from ITO. Since ITO, on the other hand, contends that no indemnification

agreement was in effect at the time of the plaintiff's accident, summary judgment must be denied.

The record further precludes a finding at this time as to the existence or nonexistence of an implied contract to indemnify. A contractual right to indemnification may be implied from the nature of the parties' relationship *(Ryan Co. v Pan-Atlantic Corp., supra,* at 132-135; *Triguero v Consolidated Rail Corp., supra,* at 101-102; *Araujo v Woods Hole, Martha's Vineyard, Nantucket S. S. Auth.,* 693 F2d 1; *Fairmont Shipping Corp. v Chevron Intl. Oil Co.,* 511 F2d 1252, *cert denied* 423 US 838). This right will only be implied, however, when unique special factors exist demonstrating that the parties intended that the "would-be indemnitor bear the ultimate responsibility for the plaintiff's safety" or when there is a generally recognized special relationship between the parties *(Araujo v Woods Hole, Martha's Vineyard, Nantucket S. S. Auth., supra,* at 2). The nature of the parties' relationship and the degree of supervision and control exercised by each over the plaintiff is unclear at this point rendering a finding as to an implied agreement to indemnify premature.

The Supreme Court did not address Standard Fruit's contention that sanctions be imposed for ITO's failure to produce a witness with sufficient knowledge. We decline to reach the issue in the first instance and remit the matter to that court for its determination. Concur—Rosenberger, J. P., Ellerin, Ross, Nardelli and Williams, JJ.